# EXHIBIT A

Josh D. Gruenberg, Esq. SB #163281
Pamela Vallero, Esq. SB #308301
Samuel Rotshtein, Esq. SB #355563
**GRUENBERG LAW**
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-3542
TELEPHONE: (619) 230-1234
TELECOPIER: (619) 230-1074

Attorneys for Plaintiff
**JESSICA GARZA**

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

8/13/2024 4:57:36 PM

Clerk of the Superior Court
By J. Walters ,Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO, CENTRAL DISTRICT**

JESSICA GARZA, an individual,

Plaintiff,

v.

FRONTIER AIRLINES, INC., an unknown business entity; ALEXANDER KENT CLARK, an individual; and DOES 1 through 25, Inclusive,

Defendants.

) Case No. **24CU006213C**
)
) **PLAINTIFF'S COMPLAINT FOR:**
)
) 1. RETALIATION [Cal. Lab. Code § 1102.5];
) 2. RETALIATION [Cal. Gov't Code § 12940(h)];
) 3. SEXUAL HARASSMENT [Cal. Gov't Code § 12940(j)];
) 4. FAILURE TO PREVENT SEXUAL HARASSMENT [Cal. Gov't Code § 12940(k)];
) 5. NEGLIGENT SUPERVISION;
) 6. SEXUAL BATTERY [Cal. Civil Code § 1708.5];
) 7. ASSAULT; and
) 8. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.
)
) **[JURY TRIAL DEMANDED]**
)

COMES NOW THE PLAINTIFF, alleging against Defendants as follows:

**GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

1. Plaintiff, JESSICA GARZA (hereinafter "Plaintiff") is a natural person who is, and at all relevant times was, a resident of the United States and domiciliary of the State of

California, County of San Diego.

2.    Plaintiff is informed and believes and thereon alleges that Defendant, FRONTIER AIRLINES, INC., (hereinafter "FA" or collectively "Defendants"), is an unknown business entity authorized for, and engaging in, business within the State of California, County of San Diego.

3.    Plaintiff is informed and believes and thereon alleges that FA is subject to suit under the California Fair Employment Housing Act (FEHA), California Government Code § 12940 *et seq.*, as it employs in excess of five (5) employees in San Diego and elsewhere.

4.    Plaintiff believes and thereon alleges that Defendant, ALEXANDER KENT CLARK (hereinafter "CLARK" or collectively "Defendants"), is a natural person who is, and at all relevant times herein mentioned was, a resident of the United States and a domiciliary of the State of Arizona, County of Maricopa.

5.    Plaintiff is ignorant to the true names and capacities of the Defendants sued herein as DOES 1 through 25 and, therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities when they are ascertained.

6.    Plaintiff is informed and believes and thereon alleges that each fictitiously named Defendant is responsible in some manner for the occurrences herein alleged, and Plaintiff's injuries and damages as herein alleged are directly, proximately and/or legally caused by Defendants.

7.    Plaintiff is informed and believes and thereon alleges that the aforementioned DOES are somehow responsible for the acts alleged herein as the agents, employers, representatives or employees of other named Defendants, and in doing the acts herein alleged were acting within the scope of their agency, employment or representative capacity of said named Defendant.

8.    Management-level employees of Defendant performed the tortious acts and omissions alleged herein. Defendant allowed and/or condoned a continuing pattern of retaliatory practices. Defendant also allowed/and or condoned a continuing pattern of unlawful

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

practices in violation of the California Labor Code and California Government Code, and have caused, and will continue to cause, Plaintiff economic damage in an amount to be proven at trial.

9. At all times mentioned herein, Cal. Gov't Code §12940 *et seq.* was in full force and effect and was binding on Defendants.

10. The actions of Defendants against Plaintiff constitute unlawful employment practices in violation of Cal. Gov't. Code §12940 *et seq.*, as herein alleged, and have caused, and will continue to cause, Plaintiff emotional distress and loss of earnings.

11. Defendants had actual and/or constructive knowledge of the tortious acts and omissions alleged and thereafter ratified said conduct by failing to reprimand or terminate.

12. Defendants committed the acts alleged herein maliciously, fraudulently, oppressively, and with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice or despicable conduct. Alternatively, Defendants' wrongful conduct was carried out with a conscious disregard for Plaintiff's rights.

13. Furthermore, Plaintiff alleges that the act(s) complained of herein took place within the above captioned judicial district.

14. Plaintiff filed a complaint with the California Civil Rights Department ("CRD") on August 13, 2024, and on that same day received a Right-To-Sue Letter.[1]

**SPECIFIC FACTUAL ALLEGATIONS**

15. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

16. FA is a commercial airline servicing over 120 destinations within the United States and employs in excess of 3,000 people.

17. On or around June 20, 2018, Plaintiff was hired by FA as a Flight Attendant.

18. At all relevant times, Plaintiff performed her job duties in a diligent and competent manner, and was commended for doing so.

[1] Plaintiff will file a claim/charge with the CRD prior to filing a lawsuit with the San Diego Superior Court.

**Plaintiff Suffers Severe and Pervasive Sexual Harassment**

19.    On or around October 29, 2023, Plaintiff departed on a four-day work trip with colleagues Michelle Gorak ("Gorak"), Dominique Thorne ("Thorne"), and CLARK. While Plaintiff knew and had a healthy working relationship with Gorak and Thorne, this was the first time Plaintiff worked with CLARK. Plaintiff and CLARK were assigned to work together in the rear of the airplane servicing the back half of the airplane's passengers while Thorne and Gorak were assigned the front of the airplane, servicing the front half of the airplane passengers. For the majority of the in-flight time, Plaintiff and CLARK had little to no contact with the front-of-plane crew.

20.    Initially, Plaintiff perceived CLARK as charming as he was very talkative and interested in getting to know Plaintiff. CLARK was jovial and enthusiastic in his work performance and initiated conversation with Plaintiff. In fact, nothing about his initial conduct caused Plaintiff any concern. However, as the four-day trip proceeded, CLARK's behavior began to change, leading Plaintiff to feel uncomfortable. For example, once the airplane departed, marking the first leg[2] of their four-day trip, CLARK began asking Plaintiff questions about her sexuality and marital status once she became isolated from Gorak and Thorne. Plaintiff felt these questions were inappropriate and would attempt to avoid answering them but Plaintiff and CLARK's close proximity on the airplane made this difficult. Plaintiff responded to these inappropriate inquiries with sharp and concise responses, hoping that CLARK would understand that she felt uncomfortable. CLARK, whether or not recognizing Plaintiff's discomfort, continued to inquire into sexually suggestive topics with Plaintiff and became increasingly intrusive and inappropriate.

21.    CLARK began asking Plaintiff what type of men she liked and made efforts to engage in physical contact with Plaintiff. For example, during the first leg of Plaintiff's four-day trip, CLARK impermissibly squeezed Plaintiff's biceps and said "I like women like you who work out," or words to that effect. In another incident, while navigating the crew

---

[2] A "leg" is an airline industry term meaning a single one-way journey from point A to point B. While a leg can make up the entire journey, the term is usually used to refer to a single part of a larger trip. This four-day trip consisted of multiple legs wherein Plaintiff and CLARK were assigned to work the rear of the plane the entire time.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

galley in the rear of the airplane, CLARK used the small space as an excuse to engage in physical contact by grabbing Plaintiff's waist with both of his hands as he passed by. In another incident, CLARK wrapped his arms around Plaintiff and held her tightly to his body despite Plaintiff's obvious displeasure and efforts to get away from him.

22.   Plaintiff was in a state of dissociation during her exposure to CLARK and his unlawful conduct. She began to feel disgusted with herself, her body would shut down when CLARK would grab her waist or touch her inappropriately and she would become paralyzed. That night, Plaintiff had nightmares where she recalled CLARK's conduct and woke up crying.

23.   On the second day of the trip on or around October 30, 2023, Plaintiff was eating dinner at the hotel with her colleague, Gorak, when CLARK joined them at the table and sat next to Plaintiff. CLARK proceeded to wrap his leg around Plaintiff's leg under the table, and out of Gorak' sight, and moved up and down, in a rubbing motion. Again, Plaintiff reverted back to a place of paralysis and dissociation during this incident but managed to snap out of it for a moment while she got up and extricated herself from the situation. Plaintiff felt that CLARK's unlawful sexual advances were becoming more pervasive which resulted in Plaintiff suffering from extreme anxiety. Plaintiff wanted to report CLARK and his unlawful conduct to her Supervisor, Kemarra Dunn ("Dunn"), but was scared to do so because CLARK informed Plaintiff that he was good friends with Dunn. Plaintiff felt that Dunn would not believe her.

24.   Plaintiff was exposed and subjected to CLARK's unlawful behavior throughout the duration of the four-day trip. At one point, while CLARK and PLAINTIFF were in the rear galley of the airplane. CLARK pulled out his cellphone and began recording Plaintiff. CLARK then used his cellphone to show Plaintiff a photograph of himself shirtless. Plaintiff tried to escape this interaction by making herself busy with work obligations, but the nature of working on an aircraft did not lend itself to many opportunities to get away from CLARK. Eventually, Plaintiff would have to return to the galley—where CLARK would be waiting for her.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

25. CLARK's unlawful and perverse actions were unrelenting throughout their trip together. Some of the other unlawful actions taken by CLARK include, but are not limited to:

   a. telling Plaintiff that one of her colleagues, Brittany Cota, had a "nice ass," or words to that effect;

   b. divulging to Plaintiff that he had been physically and emotionally abused by his father growing up;

   c. showing Plaintiff photographs of female colleagues that he had taken with his cellphone;

   d. making sexually explicit comments regarding Plaintiff's ability to "suck" when CLARK saw Plaintiff drinking a smoothie;

   e. telling Plaintiff that they should get married; and

   f. becoming angry at Plaintiff when she referred to him by his legal name, Alexander, and demanded that Plaintiff "show him respect," or words to that effect.

26. Following the trip, Plaintiff was so emotionally exhausted by CLARK's actions and did not know how to proceed. The representation by CLARK that he was close friends with Dunn and the psychological turmoil Plaintiff was now suffering from made Plaintiff feel that no one would believe her. Plaintiff chose to not say anything to Dunn or any other supervisor. Instead, Plaintiff attempted to suppress her experience and emotional suffering and move on with her life.

**Plaintiff Learns of Clark's Pattern and Practice of Sexually Harassing Female Colleagues and Files a Complaint with FA**

27. In or around December 2023, Plaintiff was working another flight with colleague Mone Ponzie ("Ponzie"). Ponzie informed Plaintiff that while she was working a flight with CLARK, she mentioned Plaintiff by name and CLARK responded that he had worked with Plaintiff and that he found her annoying. Upon hearing this, Plaintiff told Ponzie that she did not want to comment on what CLARK said as she had a bad experience with him and was attempting to forget about it. Figuring that Plaintiff's bad experience was of a

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

sexually inappropriate nature, Ponzie opened up to Plaintiff and informed her that she too suffered a similar experience at the hands of CLARK. As Ponzie recounted her experience with Plaintiff, she began to cry.

28.    In or around November 2023, Plaintiff was working a flight with her colleague, Linh Truong ("Truong"). Truong, noticing that Plaintiff was unusually quiet, asked Plaintiff if she was okay. Plaintiff informed Truong that she had a bad experience with CLARK but did not want to talk about it. Upon hearing this, Truong informed Plaintiff that she too had a bad experience with CLARK and that during a flight, CLARK asked Truong what sort of men she liked and said to her "you should go out with older men since they have lots of experience already," or words to that effect. Truong also informed Plaintiff that CLARK had sent her a message on VC View[3] while the two were staying at the same hotel during a layover. CLARK asked Truong if she wanted to come to his room and "play games," or words to that effect. Truong also informed Plaintiff that CLARK unconsentingly showed her photographs of a naked colleague and told Truong that he had slept with the woman in the photograph.

29.    Plaintiff was in disbelief to learn that her experience was not isolated but instead that she was one of many female colleagues sexually harassed by CLARK. Plaintiff chose to report his conduct in an effort to prevent CLARK from harassing more female colleagues and herself.

30.    On or around December 13, 2023, Plaintiff submitted through FA's employee portal, ProSafety, a complaint regarding CLARK's unlawful conduct, stating:

*"Had a four-day trip with flight attendant (FA) Kent Clark (Employee #435621). Employee was D position and I was B position. Throughout the trip, FA D asked what type of men I preferred as well as if I was single or dating anyone. I answered questions and thought nothing of the conversation. Later throughout the flight FA commented on FA Brittany Cota (Employee #436564) if I knew her and how she had as quoted "nice ass" and how he is a good christain man and made two passengers men apologize to her because he overheard them make inappropriate remarks regarding her gluteus maximus. Later throughout the trip flight attendant would touch and squeeze my biceps commenting how he liked*

---

[3] "VC View" is a messaging and scheduling cellphone application used by FA to communicate with its employees. VC View has a feature that allows FA employees to communicate over text message with other FA employees.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

*women who worked out like me. In another encounter when I was flying flight attendant touched the sides of my waist. Including poking with his two hands my Serratus anterior region. I kept staying frozen and perplexed because I didn't know how to respond to these encounters. During my Detroit layover, I went to eat with FA Michelle Gorak (Employee #430637) and the FA joined sitting across from me. In one instance, he wrapped his legs around my legs. I kindly excused myself saying I was tired and needed to take off my makeup since I began to get uncomfortable with these advances. FA also claimed he had been with women younger than me and wasn't old when I had mentioned I would not date someone his age. I kept making uncomfortable expressions when touched several times since those incidents didn't feel right. Especially, after FA kept saying how he was very good-looking and many women were after him. He also kept showing numerous times pictures of his youg daughter to me. I tried to avoid interacting with FA by doing trash and staying away from him. In addition, I purposely put my hair up in a bun since FA claimed when it was down that if I kept it like that I would keep distracting him. After this trip, I kept having sleepless nights since I felt disgusted with myself for allowing myself to be touched numerous times by someone I felt was inappropriate. The remarks as well as the touches made me want to say something, but part of me kept saying maybe I should not because like he mentioned he is a well-liked man and claims he is Christian and a good man. He also stated to me that he was physically abused by his father and doesn't talk to most of his siblings. He also is best friends with FA Michelle Gorak (Employee #430637). So, while I wanted to tell the rest of the crew what was going on in the back of the plane I felt no one would believe me. I finally got the courage to write this and speak up after 1 month of feeling disgusted with myself when on my last few trips 2 flight attendants mentioned how FA made comments regarding having them come on over to his hotel room. As well as being touched. I felt that I should bring this up to the company regarding this employee. Tell my experience. I cannot speak for the rest of my female coworkers, but I hope that this might add some more evidence or shed light on this FA behavior. I do enjoy working here, but I did not feel safe and disgusted with myself for not having the courage to say something sooner. And I wanted to say I'm sorry for not having the courage to report this sooner, but I hope this can shed light on these incidents, thanks!"*

31. The following day after submitting her complaint with FA, Plaintiff received an email from Dunn and Supervisor Lawrence Adler ("Adler"), requesting additional information concerning Plaintiff's complaint. Plaintiff complied and provided additional information. Following this initial email, Plaintiff did not hear from Dunn or Adler until the following month.

32. In or around January 2024, Plaintiff was summoned to a meeting with Adler wherein Plaintiff reiterated CLARK's unlawful conduct and that multiple flight attendants had similar inappropriate experiences with him. In response, Adler told Plaintiff "I hope that you never see that man in your life again," or words to that effect. Plaintiff was underwhelmed and confused by Adler's statement because Adler was in a position to ensure that CLARK could never harass her again, and simply hoping that he would not

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

harass her was insufficient to protect her from CLARK. Plaintiff felt that Adler and Dunn were not taking her complaints seriously.

**Plaintiff Suffers Retaliation for Complaining About Clark's Unlawful Conduct**

33. On or around February 25, 2024, Plaintiff was working a flight with Flight Attendant Clarence Hutchinson ("Hutchinson"). On information and belief, Hutchinson was friends with CLARK and was aware of the complaint filed against him for his sexually harassing conduct. At some point during the flight. Plaintiff was seated in a passenger row, which is required when the airplane is taking off or landing, and was contemplating whether she wanted to eat her lunch or read her book. At that moment, Plaintiff heard a shutter noise. Plaintiff understood this noise to be that of a cellphone camera and turned around to see Hutchinson on his phone. Plaintiff believed that Hutchinson had taken a photograph of her but was unsure, and so she decided not to confront Hutchinson.

34. In or around March 2024, Plaintiff was working a flight with Adler when Plaintiff briefly pulled out her personal cellphone to send a quick text message. After roughly ten seconds, Plaintiff put her cellphone back in her pocket and looked up to see Adler motioning to Plaintiff to put her phone away. Plaintiff apologized to Adler and promised that it would not happen again. Shortly thereafter, on or around March 28, 2024, Plaintiff attended a telephonic fact-finding meeting with Adler to discuss the phone incident. During that meeting, Plaintiff took responsibility for her lapse of judgment and ensured Adler that it would not happen again. Adler reassured Plaintiff that it was not a big deal and that many flight attendants use their cellphone while working.

35. In or around April 2024, Plaintiff underwent a pre-flight check[4] by Dunn which she failed for not having her FlyTab[5] charged to at least 90%.

36. On or around April 11, 2024, Plaintiff received a probation notice by FA, indicating that her employment would be terminated if she were to be found in violation of a company

---

[4] A "pre-flight check" is a procedure wherein an FA supervisor ensures all flight attendants are in compliance with company policy. Pre-flight checks typicall take place after airplane boarding but prior to take-off.
[5] A "FlyTab" is a touch-screen device used by FA Flight Attendants to assist in the successful operation of a flight. The FlyTab is used to facilitate in-flight passenger purchases.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

policy within the next year. Plaintiff felt that her probation was unfair and unwarranted, especially in light of Adler telling her that many flight attendants had been caught using their cellphones while working and that it was not a big deal. Additionally, Plaintiff had never heard of a colleague being placed on probation for failing a pre-flight check as the typical reprimand is merely a warning.

37.    On or around April 14, 2024, Plaintiff told her colleague and friend, Gorak, of her experience with CLARK. Plaintiff informed Gorak that it took her a long time to tell anyone because of the emotional turmoil the experience had caused her. In response, Gorak informed Plaintiff that CLARK had asked her for a character letter and when Gorak inquired into why he needed a character letter, CLARK told her that Plaintiff had reported him for sexual harassment and said "Jessica has nothing on me because at the end of the day it would just be a he-said-she-said situation and if I am going down I am taking that bitch down with me." Plaintiff interpreted CLARK's comment as a threat that he will lodge fraudulent complaints with FA and use his friendship with Dunn to facilitate her termination.

38.    On or around April 18, 2024, merely a few days after learning of CLARK's comment to Gorak, Plaintiff received an email from Adler, instructing her to attend a fact finding meeting in regards to a photograph that emerged of Plaintiff purportedly sleeping on an airplane. Plaintiff was informed the photograph was taken on February 25, 2024, the day Plaintiff recalled hearing the camera shutter sound of Hutchinsons cellphone. FA policy required that an employee accused of a violation is provided with the name of the accuser and any substantiating evidence of the violation. Despite FA's disclosure policy and an explicit invocation of her right to know the accuser's identity, Plaintiff was only provided with the date the photograph was taken. Plaintiff reasonably believed that her accuser was CLARK, and that FA's failure to provide his identity was an effort to conceal its retaliatory conduct.

39.    On or around April 22, 2024, Plaintiff's union representative, DeAysa Ross ("Ross"), entered the email chain and once again reiterated Plaintiff's request and right to know her

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

accuser. Once again, FA did not disclose who it was. Following Ross' initial request for more information, Plaintiff's union representatives Ross and Jeremy Laurrell ("Laurrell") sent a series of email requests which all went unanswered until on or around May 7, 2024, when Adler informed Plaintiff's union representatives that he got the photograph from Dunn. Plaintiff reasonably believes that either Dunn or Adler, or both, purposefully lied about the origins of the photograph because Plaintiff's union representative, Laurrell, had access to the flight logs and confirmed that Dunn was not present when the photograph was purportedly taken. Laurell then requested, once again, that the identity of the true accuser be revealed to Plaintiff in accordance with FA policy.

40.     On or around May 14, 2024, Plaintiff attended a telephonic fact-finding meeting. Present were Plaintiff's union representatives, Ross and Laurrell, as well as Adler, Dunn, and FA's Regional Manager, Michael McAllister. During this meeting, FA told Plaintiff that her accuser was Hutchinson and that he showed the photograph to Dunn on or around March 25, 2024, while the two were on a flight together. Plaintiff knew Dunn was lying for two reasons: (1) Plaintiff's union representatives discovered and told Plaintiff that after looking through flight logs, Hutchinson's name did not appear on the flight wherein Dunn claimed Hutchinson approached her and furnished the photograph, and (2) Plaintiff was informed by her colleague, Laura Harding, that Hutchinson wanted to talk to Plaintiff and explain that he never showed Dunn the photograph and that he knew Plaintiff was not sleeping when the photograph was taken. Furthermore, Hutchinson confirmed that the only person he ever showed the photograph to was CLARK.

41.     Additionally, during the fact-finding meeting on or around May 14, 2024, Plaintiff was accused of sleeping on two separate flights and was shown two photographs where she was allegedly asleep on an airplane. On information and belief, Dunn and/or CLARK cropped and edited one photograph to create the appearance of two separate incidences. Plaintiff told Dunn that her conduct and alteration of critical evidence was retaliatory. In response, Dunn told Plaintiff "you can't claim retaliation Jessica because you never had any issues with Clarence Hutchinson," or words to that effect. Plaintiff found Dunn's

comment enlightening as it appeared to Plaintiff that Dunn contemplated and crafted a lie about the true origin of the photograph in anticipation of such a valid assertion by Plaintiff.

**Plaintiff is Ultimately Terminated in Retaliation For Complaining About Clark's Unlawful Conduct**

42. On or around May 16, 2024, Plaintiff received an email from Adler, stating that her employment was terminated, effective immediately. On information and belief, FA closed its investigation into CLARK and cleared him of any wrongdoing shortly after Plaintiff was terminated.

43. FA's blatant and vehement discrimination and retaliation directed towards Plaintiff and the adverse employment actions she suffered herein, have caused, and will continue to cause, extreme emotional distress, anxiety, loss of sleep, and physical and mental pain and anguish. As a further result of FA's unlawful actions, Plaintiff has suffered, and continues to suffer, from loss of earnings, employment benefits, and employment opportunities.

**FIRST CAUSE OF ACTION**

**RETALIATION**

**[Cal. Lab. Code § 1102.5]**

**v. Defendant FA**

44. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

45. Labor Code section 1102.5 forbids an employer from retaliating against an employee for disclosing information or refusing to participate in an illegal activity.

46. California Labor Code § 1102.5(b) provides:

*An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another*

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

*employee who has the authority to investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.*

47.    California Labor Code § 1102.5(c) provides:

*An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an acitivty that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.*

48.    At all relevant times herein, Plaintiff was an employee of Defendant FA and performed work as an employee.

49.    Plaintiff disclosed information to Defendant FA that she reasonably believed constituted violations of multiple state or federal statutes, or a violation of or non-compliance with local, state, or federal rules or regulations, as stated herein, including but not limited to the California Labor Code and the California Government Code.

50.    Defendant FA took adverse employment action against Plaintiff, including but not limited to, placing her on probation, subjecting her to meritless reprimand and investigations, and ultimately terminating her employment. Defendant took action that adversely impacted the working conditions and benefits of Plaintiff's employment.

51.    Defendant retaliated against Plaintiff for her disclosure of information she reasonably believed to be unlawful. Plaintiff reasonably believed the conduct was in violation of local, state, or federal rules, statutes, or regulations, including but not limited to the California Labor Code and the California Government Code.

52.    Plaintiff's disclosure and/or opposition was a contributory factor in Defendant's decision to retaliate against Plaintiff, including, but not limited to, placing Plaintiff on probation, subjecting her to meritless reprimands and investigations, and ultimately terminating her employment.

53.    As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

sustained and continues to sustain substantial losses in earnings, employment benefits, employment opportunities, and Plaintiff has suffered other economic losses in an amount to be determined at time of trial. Plaintiff has sought to mitigate these damages.

54. As a further direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to her damage in a sum to be established according to proof.

55. As a result of Defendant's deliberate, outrageous, despicable conduct, Plaintiff is entitled to recover punitive and exemplary damages in an amount commensurate with Defendant's wrongful acts and sufficient to punish and deter future similar reprehensible conduct.

56. In addition to such other damages as may properly be recovered herein, Plaintiff is entitled to a $10,000 penalty for each violation of Cal. Labor Code § 1102.5, pursuant to Cal. Labor Code § 1102.5(f), and attorney fees pursuant to Cal. Code Civ. Proc. § 1021.5.

## SECOND CAUSE OF ACTION

### RETALIATION

### [Cal. Gov't Code § 12940(h)]

### v. Defendant FA

57. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

58. Plaintiff performed work for Defendant, as an employee, as stated herein.

59. Plaintiff complained that her colleague and Defendant's employee, CLARK, was sexually harassing her. Plaintiff complained that her reprimand, probation, and termination were a result of her filing a complaint against Defendant's employee, CLARK.

60. Plaintiff believes and hereon alleges that her complaints of sexual harassment and retaliation were a substantial motivating reason for Defendant engaging in conduct that, taken as a whole, materially and aversely affected the terms and conditions of Plaintiff's

employment as set forth herein.

61. As a direct, foreseeable, and proximate result Defendant's conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings, employment benefits, and Plaintiff has suffered other economic losses in an amount to be determined at time of trial. Plaintiff has sought to mitigate these damages.

62. As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has sustained and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to Plaintiff's damage in an amount according to proof at trial.

63. As a result of Defendant's deliberate, outrageous, despicable conduct, Plaintiff is entitled to recover punitive and exemplary damages in an amount commensurate with Defendant's wrongful acts and sufficient to punish and deter future similar reprehensible conduct.

64. In addition to other such damages as may properly be recovered herein. Plaintiff is entitled to recover prevailing party attorney's fees pursuant to Government Code section 12965(b).

## THIRD CAUSE OF ACTION

### SEXUAL HARASSMENT

### [Cal. Gov't Code § 12940(j)]

### v. All Defendants

65. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

66. Plaintiff was at all times material hereto an employee covered by California Government Code §12940 *et seq.*, which prohibits harassment in employment on the basis of gender.

67. Defendants are, and at all times material hereto were, an employer and/or person within the meaning of the Fair Employment and Housing Act and, as such, barred from harassing Plaintiff on the basis of her gender, as set forth in Cal. Gov't Code § 12940(j).

68. Plaintiff was subjected to unwanted and harassing conduct on the basis of her sex/gender,

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

as set forth herein.

69.  The harassing conduct was severe and pervasive.

70.  A reasonable person in Plaintiff's circumstances would have considered the work environment to be hostile or abusive, and Plaintiff did in fact consider the work environment to be hostile or abusive.

71.  As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings, employment benefits, employment opportunities, and Plaintiff has suffered other economic losses in an amount to be determined at time of trial. Plaintiff has sought to mitigate these damages.

72.  As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff suffered emotional distress, to her damage, in a sum to be established according to proof.

73.  As a result of Defendants' deliberate, outrageous, despicable conduct, Plaintiff is entitled to recover punitive and exemplary damages against Defendants in an amount commensurate with Defendant's wrongful acts and sufficient to punish and deter future similar reprehensible conduct.

74.  In addition to such other damages as may properly be recovered herein, Plaintiff is entitled to recover attorney fees and costs pursuant to Cal. Gov't. Code § 12965.

### FOURTH CAUSE OF ACTION

**FAILURE TO PREVENT SEXUAL HARASSMENT**

**[Cal. Gov't Code § 12940(k)]**

**v. Defendant FA**

75.  Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

76.  Plaintiff was subjected to harassing conduct on the basis of her sex/gender, as set forth herein.

77.  Defendant failed to take reasonable steps to prevent the harassment described herein.

78.  As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings, employment benefits,

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

employment opportunities, and Plaintiff has suffered other economic losses in an amount to be determined at time of trial. Plaintiff has sought to mitigate these damages.

79.    As a further direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to her damage in a sum to be established according to proof.

80.    In addition to such other damages as may properly be recovered herein, Plaintiff is entitled to recover attorney fees and costs pursuant Cal. Gov't. Code § 12965.

### FIFTH CAUSE OF ACTION

### NEGLIGENT SUPERVISION

### v. Defendant FA

81.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

82.    At all relevant times, Defendant had an employer/employee relationship with Plaintiff.

83.    Defendant had a duty to use reasonable care to select, hire, train, retain, and supervise an employee who was competent and fit to perform the duties required as an employee.

84.    Defendant and its agents took action against Plaintiff in violation of California law, including assault, battery and sexual harassment.

85.    Defendant knew and should have known that CLARK and other agents' conduct was unlawful and in violation of California law.

86.    Defendant FA failed to take steps necessary to prevent the unlawful conduct described herein.

87.    As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has sustained and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to her damage in a sum to be established according to proof.

///

///

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

## SIXTH CAUSE OF ACTION

### SEXUAL BATTERY

### [Cal. Civil Code § 1708.5]

### v. Defendant CLARK

88.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

89.   As set forth above, Defendant CLARK acted with the intent to cause a harmful or offensive contact with an intimate part of Plaintiff, offending Plaintiff's reasonable sense of personal dignity and resulting directly in a sexually offensive contact with Plaintiff.

90.   As set forth above, Defendant CLARK acted to cause an imminent apprehension of a harmful or offensive contact with an intimate part of Plaintiff, offending Plaintiff's reasonable sense of personal dignity and resulting directly in a sexually offensive contact with Plaintiff.

91.   As a direct, foreseeable, and proximate result of Defendant CLARK's conduct, Plaintiff has sustained and continues to sustain substantial losses in reputation, promotions, and other employment opportunities.

92.   As a direct, foreseeable, and proximate result of Defendant CLARK's conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to her damage in a sum to be established according to proof.

93.   As a result of Defendant CLARK's deliberate, outrageous, despicable conduct, Plaintiff is entitled to recover punitive and exemplary damages in an amount commensurate with CLARK's wrongful acts and sufficient to punish and deter future similar reprehensible conduct.

## SEVENTH CAUSE OF ACTION

### ASSAULT

### v. Defendant CLARK

94.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in

the preceding paragraphs as though fully set forth herein.

95.    Defendant CLARK intentionally and unlawfully engaged in conduct that created a reasonable apprehension in Plaintiff of immediate harmful or offensive contact to her person, as described herein.

96.    At no time did Plaintiff consent to any of the acts of Defendant CLARK.

97.    As a proximate result of said conduct, Plaintiff has suffered and continues to suffer extreme mental distress, humiliation, anguish, emotional and physical injuries, and economic losses, all to her damage in amounts to be proven at trial.

98.    Defendant CLARK committed the acts alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Plaintiff from an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover exemplary and punitive damages in amounts to be proven at trial.

## EIGHTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### v. All Defendants

99.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

100.    Defendants' intentional conduct, as set forth herein, was extreme and outrageous.

101.    Defendants intended to cause Plaintiff to suffer extreme emotional distress. Plaintiff suffered extreme emotional distress.

102.    As a further direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has sustained and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to Plaintiff's damage, in an amount according to proof at trial.

**WHEREFORE**, Plaintiff prays for the following relief:

1.    For compensatory damages, including loss of wages, promotional opportunities, benefits, and other opportunities of employment, according to proof;

2.    For special damages in an amount according to proof;

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

3.       For physical, mental and emotional distress damages;

4.       For back pay, front pay, and other monetary relief;

5.       For punitive damages against Defendants in an amount necessary to make an example of, and to punish, Defendants, and to deter future similar misconduct;

6.       For costs of suit, including attorney fees as permitted by law, including those available pursuant to Cal. Gov't Code § 12965(b);

7.       For an award of interest, including prejudgment interest, at the legal rate as permitted by law, including those permitted by Cal. Gov't Code § 12965(b);

8.       For such other and further relief as the Court deems proper and just under all the circumstances.


**PLAINTIFF JESSICA GARZA** demands a jury trial on all issues in this case.


DATED: August 13, 2024                                    **GRUENBERG LAW**

JOSH D. GRUENBERG, ESQ.
PAMELA VALLERO, ESQ.
SAMUEL ROTSHTEIN, ESQ.
Attorneys for Plaintiff,
**JESSICA GARZA**

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

(1)      PLAINTIFF JESSICA GARZAS' RIGHT TO SUE LETTER FROM THE

CALIFORNIA CIVIL RIGHTS DEPARTMENT ("CRD")



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency          GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

August 13, 2024


Samuel Rotshtein
2155 First Avenue
San Diego, CA 92101

RE:     **Notice to Complainant's Attorney**
        CRD Matter Number: 202408-25797613
        Right to Sue: Garza / Frontier Airlines Inc. et al.

Dear Samuel Rotshtein:

Attached is a copy of your complaint of discrimination filed with the Civil Rights
Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq. Also attached is a copy of your Notice of Case
Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

August 13, 2024

RE:    **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202408-25797613
Right to Sue: Garza / Frontier Airlines Inc. et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil
Rights Department (CRD) in accordance with Government Code section 12960. This
constitutes service of the complaint pursuant to Government Code section 12962. The
complainant has requested an authorization to file a lawsuit. A copy of the Notice of
Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their
contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency     GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

August 13, 2024

Jessica Garza
,

RE:     **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202408-25797613
Right to Sue: Garza / Frontier Airlines Inc. et al.

Dear Jessica Garza:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective August 13, 2024 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Civil Rights Department

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Jessica Garza                                        CRD No. 202408-25797613

                              Complainant,

vs.

Frontier Airlines Inc.
,

Alexander "Kent" Clark
,

                              Respondents

---

**1.** Respondent **Frontier Airlines Inc.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**.Complainant is naming **Alexander "Kent" Clark** individual as Co-Respondent(s).

**3**. Complainant **Jessica Garza**, resides in the City of **,** State of **.**

**4**. Complainant alleges that on or about **May 16, 2024**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's sex/gender, other, sexual harassment- hostile environment, sexual harassment- quid pro quo.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was terminated, reprimanded, asked impermissible non-job-related questions, denied work opportunities or assignments.

**Additional Complaint Details:** Complainant re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein. FA is a commercial airline servicing over 120 destinations within the United States and employs in excess of 3,000 people.

-1-
*Complaint – CRD No. 202408-25797613*

Date Filed: August 13, 2024

CRD-ENF 80 RS (Revised 2024/05)

On or around June 20, 2018, Complainant was hired by FA as a Flight Attendant. At all relevant times, Complainant performed her job duties in a diligent and competent manner, and was commended for doing so.

Complainant Suffers Severe and Pervasive Sexual Harassment

On or around October 29, 2023, Complainant departed on a four-day work trip with colleagues Michelle Gorak ("Gorak"), Dominique Thorne ("Thorne"), and CLARK. While Complainant knew and had a healthy working relationship with Gorak and Thorne, this was the first time Complainant worked with CLARK. Complainant and CLARK were assigned to work together in the rear of the airplane servicing the back half of the airplane's passengers while Thorne and Gorak were assigned the front of the airplane, servicing the front half of the airplane passengers. For the majority of the in-flight time, Complainant and CLARK had little to no contact with the front-of-plane crew.

Initially, Complainant perceived CLARK as charming as he was very talkative and interested in getting to know Complainant. CLARK was jovial and enthusiastic in his work performance and initiated conversation with Complainant. In fact, nothing about his initial conduct caused Complainant any concern. However, as the four-day trip proceeded, CLARK's behavior began to change, leading Complainant to feel uncomfortable. For example, once the airplane departed, marking the first leg of their four-day trip, CLARK began asking Complainant questions about her sexuality and marital status once she became isolated from Gorak and Thorne. Complainant felt these questions were inappropriate and would attempt to avoid answering them but Complainant and CLARK's close proximity on the airplane made this difficult. Complainant responded to these inappropriate inquiries with sharp and concise responses, hoping that CLARK would understand that she felt uncomfortable. CLARK, whether or not recognizing Complainant's discomfort, continued to inquire into sexually suggestive topics with Complainant and became increasingly intrusive and inappropriate.

CLARK began asking Complainant what type of men she liked and made efforts to engage in physical contact with Complainant. For example, during the first leg of Complainant's four-day trip, CLARK impermissibly squeezed Complainant's biceps and said "I like women like you who work out," or words to that effect. In another incident, while navigating the crew galley in the rear of the airplane, CLARK used the small space as an excuse to engage in physical contact by grabbing Complainant's waist with both of his hands as he passed by. In another incident, CLARK wrapped his arms around Complainant and held her tightly to his body despite Complainant's obvious displeasure and efforts to get away from him.

Complainant was in a state of dissociation during her exposure to CLARK and his unlawful conduct. She began to feel disgusted with herself, her body would shut down when CLARK would grab her waist or touch her inappropriately and she would become paralyzed. That night, Complainant had nightmares where she recalled CLARK's conduct and woke up crying.

On the second day of the trip on or around October 30, 2023, Complainant was eating dinner at the hotel with her colleague, Gorak, when CLARK joined them at the table and sat next to Complainant. CLARK proceeded to wrap his leg around Complainant's leg under the table, and out of Gorak' sight, and moved up and down, in a rubbing motion. Again, Complainant reverted back to a place of paralysis and dissociation during this incident but managed to snap out of it for a moment while she got up and extricated herself from the situation. Complainant felt that CLARK's unlawful sexual advances were becoming more

-2-

*Complaint – CRD No. 202408-25797613*

Date Filed: August 13, 2024

pervasive which resulted in Complainant suffering from extreme anxiety. Complainant wanted to report CLARK and his unlawful conduct to her Supervisor, Kemarra Dunn ("Dunn"), but was scared to do so because CLARK informed Complainant that he was good friends with Dunn. Complainant felt that Dunn would not believe her.

Complainant was exposed and subjected to CLARK's unlawful behavior throughout the duration of the four-day trip. At one point, while CLARK and COMPLAINANT were in the rear galley of the airplane. CLARK pulled out his cellphone and began recording Complainant. CLARK then used his cellphone to show Complainant a photograph of himself shirtless. Complainant tried to escape this interaction by making herself busy with work obligations, but the nature of working on an aircraft did not lend itself to many opportunities to get away from CLARK. Eventually, Complainant would have to return to the galley— where CLARK would be waiting for her.

CLARK's unlawful and perverse actions were unrelenting throughout their trip together. Some of the other unlawful actions taken by CLARK include, but are not limited to:

a.      telling Complainant that one of her colleagues, Brittany Cota, had a "nice ass," or words to that effect;

b.      divulging to Complainant that he had been physically and emotionally abused by his father growing up;

c.      showing Complainant photographs of female colleagues that he had taken with his cellphone;

d.      making sexually explicit comments regarding Complainant's ability to "suck" when CLARK saw Complainant drinking a smoothie;

e.      telling Complainant that they should get married; and

f.      becoming angry at Complainant when she referred to him by his legal name, Alexander, and demanded that Complainant "show him respect," or words to that effect.

Following the trip, Complainant was so emotionally exhausted by CLARK's actions and did not know how to proceed. The representation by CLARK that he was close friends with Dunn and the psychological turmoil Complainant was now suffering from made Complainant feel that no one would believe her. Complainant chose to not say anything to Dunn or any other supervisor. Instead, Complainant attempted to suppress her experience and emotional suffering and move on with her life.

Complainant Learns of Clark's Pattern and Practice of Sexually Harassing Female Colleagues and Files a Complaint with FA

In or around December 2023, Complainant was working another flight with colleague Mone Ponzie ("Ponzie"). Ponzie informed Complainant that while she was working a flight with CLARK, she mentioned Complainant by name and CLARK responded that he had worked with Complainant and that he found her annoying. Upon hearing this, Complainant told Ponzie that she did not want to comment on what CLARK said as she had a bad experience with him and was attempting to forget about it. Figuring that Complainant's bad experience was of a sexually inappropriate nature, Ponzie opened up to Complainant and informed her that she too suffered a similar experience at the hands of CLARK. As Ponzie recounted her experience with Complainant, she began to cry.

In or around November 2023, Complainant was working a flight with her colleague, Linh Truong ("Truong"). Truong, noticing that Complainant was unusually quiet, asked Complainant if she was okay. Complainant informed Truong that she had a bad experience with CLARK but did not want to talk about it. Upon hearing this, Truong informed

-3-

*Complaint – CRD No. 202408-25797613*

Date Filed: August 13, 2024

1  Complainant that she too had a bad experience with CLARK and that during a flight, CLARK
2  asked Truong what sort of men she liked and said to her "you should go out with older men
   since they have lots of experience already," or words to that effect. Truong also informed
3  Complainant that CLARK had sent her a message on VC View while the two were staying at
   the same hotel during a layover. CLARK asked Truong if she wanted to come to his room
4  and "play games," or words to that effect. Truong also informed Complainant that CLARK
   unconsentingly showed her photographs of a naked colleague and told Truong that he had
5  slept with the woman in the photograph.
   Complainant was in disbelief to learn that her experience was not isolated but instead that
6  she was one of many female colleagues sexually harassed by CLARK. Complainant chose
   to report his conduct in an effort to prevent CLARK from harassing more female colleagues
7  and herself.
   On or around December 13, 2023, Complainant submitted through FA's employee portal,
8  ProSafety, a complaint regarding CLARK's unlawful conduct, stating:

9  "Had a four-day trip with flight attendant (FA) Kent Clark (Employee #435621). Employee
   was D position and I was B position. Throughout the trip, FA D asked what type of men I
10 preferred as well as if I was single or dating anyone. I answered questions and thought
   nothing of the conversation. Later throughout the flight FA commented on FA Brittany Cota
11 (Employee #436564) if I knew her and how she had as quoted "nice ass" and how he is a
   good christian man and made two passengers men apologize to her because he overheard
12 them make inappropriate remarks regarding her gluteus maximus. Later throughout the trip
   flight attendant would touch and squeeze my biceps commenting how he liked women who
13 worked out like me. In another encounter when I was flying flight attendant touched the
   sides of my waist. Including poking with his two hands my Serratus anterior region. I kept
14 staying frozen and perplexed because I didn't know how to respond to these encounters.
   During my Detroit layover, I went to eat with FA Michelle Gorak (Employee #430637) and
15 the FA joined sitting across from me. In one instance, he wrapped his legs around my legs. I
   kindly excused myself saying I was tired and needed to take off my makeup since I began to
16 get uncomfortable with these advances. FA also claimed he had been with women younger
   than me and wasn't old when I had mentioned I would not date someone his age. I kept
17 making uncomfortable expressions when touched several times since those incidents didn't
   feel right. Especially, after FA kept saying how he was very good-looking and many women
18 were after him. He also kept showing numerous times pictures of his youg daughter to me. I
   tried to avoid interacting with FA by doing trash and staying away from him. In addition, I
19 purposely put my hair up in a bun since FA claimed when it was down that if I kept it like that
   I would keep distracting him. After this trip, I kept having sleepless nights since I felt
20 disgusted with myself for allowing myself to be touched numerous times by someone I felt
   was inappropriate. The remarks as well as the touches made me want to say something, but
21 part of me kept saying maybe I should not because like he mentioned he is a well-liked man
   and claims he is Christian and a good man. He also stated to me that he was physically
22 abused by his father and doesn't talk to most of his siblings. He also is best friends with FA
   Michelle Gorak (Employee #430637). So, while I wanted to tell the rest of the crew what was
23 going on in the back of the plane I felt no one would believe me. I finally got the courage to
   write this and speak up after 1 month of feeling disgusted with myself when on my last few
24 trips 2 flight attendants mentioned how FA made comments regarding having them come on
25

26                                -4-
                       *Complaint – CRD No. 202408-25797613*
27
   Date Filed: August 13, 2024
28

over to his hotel room. As well as being touched. I felt that I should bring this up to the company regarding this employee. Tell my experience. I cannot speak for the rest of my female coworkers, but I hope that this might add some more evidence or shed light on this FA behavior. I do enjoy working here, but I did not feel safe and disgusted with myself for not having the courage to say something sooner. And I wanted to say I'm sorry for not having the courage to report this sooner, but I hope this can shed light on these incidents, thanks!"

The following day after submitting her complaint with FA, Complainant received an email from Dunn and Supervisor Lawrence Adler ("Adler"), requesting additional information concerning Complainant's complaint. Complainant complied and provided additional information. Following this initial email, Complainant did not hear from Dunn or Adler until the following month.

In or around January 2024, Complainant was summoned to a meeting with Adler wherein Complainant reiterated CLARK's unlawful conduct and that multiple flight attendants had similar inappropriate experiences with him. In response, Adler told Complainant "I hope that you never see that man in your life again," or words to that effect. Complainant was underwhelmed and confused by Adler's statement because Adler was in a position to ensure that CLARK could never harass her again, and simply hoping that he would not harass her was insufficient to protect her from CLARK. Complainant felt that Adler and Dunn were not taking her complaints seriously.

Complainant Suffers Retaliation for Complaining About Clark's Unlawful Conduct

On or around February 25, 2024, Complainant was working a flight with Flight Attendant Clarence Hutchinson ("Hutchinson"). On information and belief, Hutchinson was friends with CLARK and was aware of the complaint filed against him for his sexually harassing conduct. At some point during the flight, Complainant was seated in a passenger row, which is required when the airplane is taking off or landing, and was contemplating whether she wanted to eat her lunch or read her book. At that moment, Complainant heard a shutter noise. Complainant understood this noise to be that of a cellphone camera and turned around to see Hutchinson on his phone. Complainant believed that Hutchinson had taken a photograph of her but was unsure, and so she decided not to confront Hutchinson.

In or around March 2024, Complainant was working a flight with Adler when Complainant briefly pulled out her personal cellphone to send a quick text message. After roughly ten seconds, Complainant put her cellphone back in her pocket and looked up to see Adler motioning to Complainant to put her phone away. Complainant apologized to Adler and promised that it would not happen again. Shortly thereafter, on or around March 28, 2024, Complainant attended a telephonic fact-finding meeting with Adler to discuss the phone incident. During that meeting, Complainant took responsibility for her lapse of judgment and ensured Adler that it would not happen again. Adler reassured Complainant that it was not a big deal and that many flight attendants use their cellphone while working.

In or around April 2024, Complainant underwent a pre-flight check by Dunn which she failed for not having her FlyTab charged to at least 90%.

On or around April 11, 2024, Complainant received a probation notice by FA, indicating that her employment would be terminated if she were to be found in violation of a company policy within the next year. Complainant felt that her probation was unfair and unwarranted, especially in light of Adler telling her that many flight attendants had been caught using their cellphones while working and that it was not a big deal. Additionally, Complainant had never

-5-

*Complaint – CRD No. 202408-25797613*

Date Filed: August 13, 2024

heard of a colleague being placed on probation for failing a pre-flight check as the typical reprimand is merely a warning.

On or around April 14, 2024, Complainant told her colleague and friend, Gorak, of her experience with CLARK. Complainant informed Gorak that it took her a long time to tell anyone because of the emotional turmoil the experience had caused her. In response, Gorak informed Complainant that CLARK had asked her for a character letter and when Gorak inquired into why he needed a character letter, CLARK told her that Complainant had reported him for sexual harassment and said "Jessica has nothing on me because at the end of the day it would just be a he-said-she-said situation and if I am going down I am taking that bitch down with me." Complainant interpreted CLARK's comment as a threat that he will lodge fraudulent complaints with FA and use his friendship with Dunn to facilitate her termination.

On or around April 18, 2024, merely a few days after learning of CLARK's comment to Gorak, Complainant received an email from Adler, instructing her to attend a fact finding meeting in regards to a photograph that emerged of Complainant purportedly sleeping on an airplane. Complainant was informed the photograph was taken on February 25, 2024, the day Complainant recalled hearing the camera shutter sound of Hutchinsons cellphone. FA policy required that an employee accused of a violation is provided with the name of the accuser and any substantiating evidence of the violation. Despite FA's disclosure policy and an explicit invocation of her right to know the accuser's identity, Complainant was only provided with the date the photograph was taken. Complainant reasonably believed that her accuser was CLARK, and that FA's failure to provide his identity was an effort to conceal its retaliatory conduct.

On or around April 22, 2024, Complainant's union representative, DeAysa Ross ("Ross"), entered the email chain and once again reiterated Complainant's request and right to know her accuser. Once again, FA did not disclose who it was. Following Ross' initial request for more information, Complainant's union representatives Ross and Jeremy Laurrell ("Laurrell") sent a series of email requests which all went unanswered until on or around May 7, 2024, when Adler informed Complainant's union representatives that he got the photograph from Dunn. Complainant reasonably believes that either Dunn or Adler, or both, purposefully lied about the origins of the photograph because Complainant's union representative, Laurrell, had access to the flight logs and confirmed that Dunn was not present when the photograph was purportedly taken. Laurell then requested, once again, that the identity of the true accuser be revealed to Complainant in accordance with FA policy.

On or around May 14, 2024, Complainant attended a telephonic fact-finding meeting. Present were Complainant's union representatives, Ross and Laurrell, as well as Adler, Dunn, and FA's Regional Manager, Michael McAllister. During this meeting, FA told Complainant that her accuser was Hutchinson and that he showed the photograph to Dunn on or around March 25, 2024, while the two were on a flight together. Complainant knew Dunn was lying for two reasons: (1) Complainant's union representatives discovered and told Complainant that after looking through flight logs, Hutchinson's name did not appear on the flight wherein Dunn claimed Hutchinson approached her and furnished the photograph, and (2) Complainant was informed by her colleague, Laura Harding, that Hutchinson wanted to talk to Complainant and explain that he never showed Dunn the photograph and that he knew Complainant was not sleeping when the photograph was taken. Furthermore, Hutchinson confirmed that the only person he ever showed the photograph to was CLARK.

-6-

*Complaint – CRD No. 202408-25797613*

Date Filed: August 13, 2024

CRD-ENF 80 RS (Revised 2024/05)

1  Additionally, during the fact-finding meeting on or around May 14, 2024, Complainant was
2  accused of sleeping on two separate flights and was shown two photographs where she
   was allegedly asleep on an airplane. On information and belief, Dunn and/or CLARK
   cropped and edited one photograph to create the appearance of two separate incidences.
3  Complainant told Dunn that her conduct and alteration of critical evidence was retaliatory. In
4  response, Dunn told Complainant "you can't claim retaliation Jessica because you never
   had any issues with Clarence Hutchinson," or words to that effect. Complainant found
5  Dunn's comment enlightening as it appeared to Complainant that Dunn contemplated and
   crafted a lie about the true origin of the photograph in anticipation of such a valid assertion
6  by Complainant.

   Complainant is Ultimately Terminated in Retaliation For Complaining About Clark's Unlawful
7  Conduct

8  On or around May 16, 2024, Complainant received an email from Adler, stating that her
   employment was terminated, effective immediately. On information and belief, FA closed its
9  investigation into CLARK and cleared him of any wrongdoing shortly after Complainant was
   terminated.

10 FA's blatant and vehement discrimination and retaliation directed towards Complainant and
   the adverse employment actions she suffered herein, have caused, and will continue to
11 cause, extreme emotional distress, anxiety, loss of sleep, and physical and mental pain and
   anguish. As a further result of FA's unlawful actions, Complainant has suffered, and
12 continues to suffer, from loss of earnings, employment benefits, and employment
   opportunities.

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                          -7-
                              *Complaint – CRD No. 202408-25797613*
27

28 Date Filed: August 13, 2024

                                                              CRD-ENF 80 RS (Revised 2024/05)

1  VERIFICATION

2  I, **Samuel Rotshtein**, am the **Attorney** in the above-entitled complaint.  I have read
3  the foregoing complaint and know the contents thereof.  The matters alleged are
   based on information and belief, which I believe to be true.

4  On August 13, 2024, I declare under penalty of perjury under the laws of the State of
5  California that the foregoing is true and correct.

6                                                      **San Diego, California**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                          -8-
                          *Complaint – CRD No. 202408-25797613*
27
   Date Filed: August 13, 2024
28
                                                      CRD-ENF 80 RS (Revised 2024/05)