Kara Adelle Ritter Cole, Bar No. 306515
kcole@littler.com
LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, California 92101.3577
Telephone:  619.232.0441
Fax No.:    619.232.4302

Carolyn Theis, Colorado Bar No.: 54993
[*Pro Hac Vice* Pending]
catheis@littler.com
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, Colorado 8020.5835
Telephone:  303.629.6200
Fax No.:    303.629.0200

Attorneys for Defendant
FRONTIER AIRLINES, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA GARZA,<br><br>        Plaintiff,<br><br>    v.<br><br>FRONTIER AIRLINES, INC., a Delaware Corporation; ALEXANDER KENT CLARK, an individual, and Does 1-25, inclusive,<br><br>        Defendant. | Case No.  3:24-cv-01702-WQH-MMP<br><br>**DECLARATION OF MARCIA ATTEA IN SUPPORT OF DEFENDANT FRONTIER AIRLINES, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**<br><br>Date:        November 4, 2024<br>             *NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT*<br>Judge:       Hon. William Q. Hayes<br><br>Complaint filed: August 13, 2024 |

LITTLER MENDELSON P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101
619.232.0441

DECLARATION OF MARCIA ATTEA          1          CASE NO. 3:24-cv-01702-WQH-MM

I, Marcia Attea, declare under the penalty of perjury that the matters described below are true and correct to the best of my knowledge and belief:

1.    I am over the age of majority and am competent to testify.

2.    I am currently employed by Frontier Airlines, Inc. ("Frontier"), a commercial passenger air carrier, as a Human Resources Business Partner, responsible for human resources matters supporting numerous departments of the airline, including Inflight. I am based at Frontier's headquarters in Denver, Colorado, along with Frontier's senior human resources leadership and Frontier's senior Inflight management.

3.    Although Frontier flies to destinations in California, Frontier has no crew bases for pilots or flight attendants in California. Flight crews begin and end flight sequences, also known as trips, from Frontier's other bases. These include bases in Denver, Colorado, Las Vegas, Nevada, Phoenix, Arizona, Orlando, Florida, Tampa, Florida, Trenton, New Jersey, and others.

4.    Plaintiff Jessica Garza was a flight attendant for Frontier from 2018 until her mid-May 2024, termination for sleeping or appearing to sleep during flight duty.

5.    According to Frontier's inflight and personnel records maintained in the ordinary course of business, Frontier hired Ms. Garza as a flight attendant in 2018. At that time, she listed a residential address in Orlando, Florida.

6.    Ms. Garza received her initial flight attendant training in Orlando, Florida. Frontier's records show that after Ms. Garza completed her training, she was stationed at the following bases (which are also called domiciles):

Denver, Colorado (June 2018 through August 2018)

Orlando, Florida (September 2018 through February 2019)

Trenton, New Jersey (March through May 2019)

Las Vegas, Nevada (June 2019 through April 2022)

Tampa, Florida (May 2022)

Las Vegas, Nevada (June 2022 through January 2023)

LITTLER MENDELSON P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101
619.232.0441

DECLARATION OF MARCIA ATTEA    2    CASE NO.3:24-cv-01702-WQH-MM

1    Phoenix, Arizona (February 2023 through April 2024)

2    Las Vegas, Nevada (May 2024)

3    7.    At Frontier, crew members are required to keep the company current as
4    to their residential address.  This is for tax withholding purposes and to maintain
5    accurate contact information.  In 2019, Ms. Garza changed residential addresses from
6    Florida to California.  She would have commuted on her own time (which is not
7    considered to be duty time) to report for duty at the base(s) at which she was
8    stationed.  In most of 2023, and until the end of April 2024, Plaintiff was stationed at
9    Frontier's base in Phoenix, Arizona. While she was based in Phoenix, her base
10   supervisors (who were also physically based in Phoenix) were Lawrence Adler and
11   Kemarra Dunn.   The base supervisors reported to a regional Inflight manager,
12   Michael McAllister, who was based in Las Vegas, Nevada – who in turn reported to
13   senior Inflight management in Denver.

14   8.    In late October 2023, Ms. Garza was assigned to a four-day trip
15   beginning and ending at her Phoenix base.  That trip, beginning on October 29, 2023,
16   consisted of the following flight segments, according to Frontier's records
17   maintained in the ordinary course of business:

18   October 29

19   Phoenix to San Francisco (Flight 1581)

20   San Francisco to Detroit (Flight 1581) with an overnight layover in
21   Detroit.

22   October 30

23   Detroit to Denver (Flight 0625)

24   Denver to St. Louis (Flight 0700)

25   St. Louis to Denver (Flight 0701), with an overnight layover in Denver.

26   October 31

27   Denver to San Antonio (Flight 0990)

28   San Antonio to Denver (Flight 0991)

LITTLER MENDELSON P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101
619.232.0441

DECLARATION OF MARCIA ATTEA          3          CASE NO.  2:21-cv-00898-TLN-AC

1    Denver to Seattle (Flight 0243), with an overnight layover in Seattle.

2    November 1

3    Seattle to Phoenix (Flight 2788)

4    9.    I have reviewed and am aware that Ms. Garza's civil complaint

5    describes an alleged incident where she was on a trip, and was purportedly

6    photographed by another flight attendant, Clarence Hutchinson, in late February

7    2024.  According to our records, those flights were from Fort Myers, Florida to

8    Syracuse, New York on February 24, 2024 (Flight 2418), and Syracuse, New York

9    to Orlando, Florida on February 25, 2024 (Flight 2289).

10    10.    Based on the aforementioned photographs and other information

11    provided to Frontier's Inflight management, Frontier initiated an investigation into

12    Ms. Garza's reported workplace misconduct and violation of policy.  Investigations

13    of a disciplinary nature are conducted under the auspices of and in compliance with

14    Section 18 of the applicable collective bargaining agreement between Frontier and

15    the Association of Flight Attendants, the union representing Frontier's flight

16    attendants, including Ms. Garza.  A true and correct copy of the relevant portions of

17    the applicable collective bargaining agreement, which was in effect at the time in

18    2024, and still is in effect today, is attached to this declaration as **Exhibit A**.

19    11.    The investigation into Ms. Garza's workplace misconduct and violation

20    of policy concerned her allegedly sleeping or appearing to be asleep during flight

21    duty, which is strictly forbidden under Frontier's rules in its Flight Attendant Manual,

22    which states that no flight attendant may sleep or appear to be sleeping while on duty.

23    This policy covers all areas of the cabin, on the jumpseat, or in the passenger seat.  I

24    provided support to Ms. Garza's inflight supervisors in Phoenix in connection with

25    this investigation.  A fact-finding meeting took place on May 14, 2024.  Her inflight

26    supervisor in Phoenix, the regional inflight manager in Las Vegas, and I concluded

27    there was ample evidence to conclude Ms. Garza had engaged in violation of the

28    aforementioned rule and, accordingly, that termination of her employment was

LITTLER MENDELSON P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101
619.232.0441

DECLARATION OF MARCIA ATTEA          4          CASE NO.  2:21-cv-00898-TLN-AC

warranted.    Laura Rush, Director of Inflight in Denver, concurred with our recommendation to terminate Ms. Garza's employment.  All of the decision-making relative to Ms. Garza's employment with Frontier took place outside of California, either in Arizona and/or Denver.

12.    I am further aware that Ms. Garza's complaint identifies another Frontier flight attendant, Alexander Kent Clark. Mr. Clark is a current Frontier flight attendant.    According to our personnel records kept in the ordinary course of business, he lists a home address in Arizona.  From 2021 and to this date, he has been based in Las Vegas, Nevada.

I affirm under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 30th day of September 2024, in Denver, Colorado

*Marcia Attea*

Marcia Attea, HRBP

INDEX OF EXHIBITS

| Exhibit | Page No. |
|---------|----------|
| A  - Collective Bargaining Agreement | 7 |

LITTLER MENDELSON P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101
619.232.0441

# EXHIBIT A

# AFA Contract
# at
# Frontier Airlines

**May 15, 2019 – May 15, 2024**



**TABLE OF CONTENTS**

| ARTICLES | |
| --- | --- |
| **1. RECOGNITION & SCOPE** | **1.1-3** |
| A. Recognition | 1 |
| B. Scope | 1 |
| C. Successor | 1 |
| D. Merger Protection | 1 |
| E. Expedited Arbitration | 2 |
| F. Definitions | 2 |
| G. Changes in writing | 2 |
| **2. DEFINITIONS** | **2.1-4** |
| **3. COMPENSATION** | **3.1-8** |
| A. Hourly Rates | 1 |
| B. Automated Bid System Cost | 4 |
| C. Expenses Away From Base | 4 |
| D. Paid Time Off | 5 |
| E. Parking | 5 |
| F. Training Pay | 5 |
| G. Holiday Pay | 5 |
| H. Deadhead Pay | 6 |
| I. Company Business Pay | 6 |
| J. Miscellaneous Pay | 6 |
| K. Payroll | 7 |
| **4. HOURS OF SERVICE** | **4.1-9** |
| A. General | 1 |
| B. Duty Period | 1 |
| C. Rest Period | 3 |
| D. Duty Period–Report Time & Release | 7 |
| E. Report Time to the Aircraft | 8 |
| F. Days Off | 9 |
| G. Duty & Rest Charts | 9 |
| **5. SCHEDULING** | **5.1-25** |
| A. AFA Scheduling Committee & Scheduling Department | 1 |
| B. Trip Construction | 2 |
| C. Bid Period Time Table | 3 |
| D. Eligibility to Bid | 3 |
| E. Preference Bid System/PBS | 3 |
| F. PBS Preferences | 4 |
| G. Line Construction | 5 |
| H. Bidding | 7 |
| I. Pre-Award Period/Results Page | 8 |
| J. Transition | 9 |
| K. Low-Time Flight Attendants | 9 |
| L. Flight Attendant Adjustment of Schedule | 11 |
| M. Company Adjustment of Schedule | 16 |
| N. Premium Add Folder (PAF) | 22 |
| O. Involuntary Junior Assignment (JA) | 22 |
| P. Order of Assignment | 23 |
| Q. Deadheading | 23 |

| R. Charter Flying | 25 |
| --- | --- |
| S. Recorded Phone Lines | 25 |
| **6. RESERVE** | **6.1-11** |
| A. Reserve Flight Attendants – General | 1 |
| B. Reserve Shifts | 1 |
| C. Aggressive Reserve Assignments | 2 |
| D. Contact and Report Time Guidelines | 3 |
| E. Trip Assignment Process | 3 |
| F. Ready Reserve (Airport Standby) | 4 |
| G. Release from Duty | 5 |
| H. Schedule Adjustments | 5 |
| I. Mixed Lines | 7 |
| J. Temporary Duty (TDY) | 9 |
| K. Reserve Flight Attendant Absence Proration Table | 9 |
| L. Reserve Assignment Transparency | 10 |
| **7. TRAINING** | **7.1-2** |
| A. General and Classroom Requirements | 1 |
| B. Requirements for Attending Recurrent Training | 1 |
| C. Trading Recurrent Training Dates | 1 |
| D. Training Out-of-Base | 2 |
| **8. SICK LEAVE** | **8.1-4** |
| A. Accrual | 1 |
| B. Use of Sick Leave | 1 |
| C. Replenishment of Sick Bank | 1 |
| D. Sick Leave Procedure | 2 |
| E. Sick Leave Pay | 4 |
| F. Verification of Illness/Injury | 4 |
| **9. VACATION** | **9.1-4** |
| A. General | 1 |
| B. Accrual | 1 |
| C. Vacation Bidding | 2 |
| D. Vacation Bid Periods | 3 |
| E. Vacation Trades | 4 |
| F. Vacation Slides | 4 |
| **10. SENIORITY** | **10.1-4** |
| A. Seniority Accrual | 1 |
| B. When Seniority Will Not Govern | 1 |
| C. Transfers | 2 |
| D. Protest of Seniority List | 3 |
| E. Seniority Rights Forfeited | 4 |
| F. Probation | 4 |
| **11. UNIFORMS** | **11.1** |
| A. Purchase of Initial Uniform | 1 |
| B. Uniform Credit and Maintenance of Uniform | 1 |
| **12. LEAVE OF ABSENCE** | **12.1-6** |
| A. General Guidelines | 1 |

| | | |
|---|---|---|
| B. | RETURNING FROM LEAVE OF ABSENCE | 1 |
| C. | RETURNING FROM INTERMITTENT LEAVE OF ABSENCE | 2 |
| D. | COMPANY-OFFERED LEAVE | 3 |
| E. | FAMILY MEDICAL LEAVE | 3 |
| F. | PREGNANCY & MATERNITY LEAVE | 3 |
| G. | MEDICAL LEAVE | 4 |
| H. | ON-THE-JOB ILLNESS/INJURY (OJI) | 4 |
| I. | PERSONAL LEAVE | 5 |
| J. | FUNERAL LEAVE | 5 |
| K. | EMERGENCY LEAVE | 5 |
| L. | JURY DUTY LEAVE | 6 |
| M. | MILITARY LEAVE | 6 |
| N. | UNION LEAVE | 6 |
| O. | DOMESTIC VIOLENCE LEAVE | 6 |
| **13. VACANCIES** | | **13.1-3** |
| A. | STANDING BIDS | 1 |
| B. | NOTICE OF VACANCY | 1 |
| C. | AWARDING AND ASSIGNMENT OF VACANCIES | 1 |
| D. | BASE SWAPS | 2 |
| E. | NEW BASE OPENINGS | 3 |
| **14. FURLOUGH & DISPLACEMENT** | | **14.1-3** |
| A. | FURLOUGH AND DISPLACEMENT | 1 |
| B. | FURLOUGH PAY AND BENEFITS | 2 |
| C. | TRANSFER TO OTHER DEPARTMENT PRIOR TO FURLOUGH | 2 |
| D. | RECALL | 2 |
| **15. MOVING EXPENSES** | | **15.1-2** |
| A. | ELIGIBILITY | 1 |
| B. | MOVING BENEFITS | 1 |
| C. | MOVING DAYS | 1 |
| D. | GENERAL | 2 |
| **16. UNION ACTIVITIES** | | **16.1-2** |
| A. | GENERAL | 1 |
| B. | UNION BUSINESS LEAVE | 1 |
| **17. UNION SECURITY & DUES CHECK-OFF** | | **17.1-4** |
| A. | AGENCY SHOP | 1 |
| B. | DELINQUENT DUES | 1 |
| C. | REVIEW PROCEDURE | 1 |
| D. | DUES CHECK-OFF | 2 |
| E. | DUES DEDUCTION | 4 |
| **18. GRIEVANCE PROCEDURE** | | **18.1-3** |
| A. | GENERAL | 1 |
| B. | INVESTIGATIONS – DISCIPLINE AND DISCHARGE | 1 |
| C. | THE GRIEVANCE PROCESS | 1 |
| D. | GRIEVANCE REVIEW MEETINGS | 3 |
| E. | TIME LIMITS & SUBMISSIONS | 3 |
| **19. SYSTEM BOARD OF ADJUSTMENT** | | **19.1-2** |
| A. | ESTABLISHMENT | 1 |
| B. | MEMBERSHIP | 1 |
| C. | JURISDICTION | 1 |
| D. | DOCUMENTS, WITNESSES, EVIDENCE & REPRESENTATION | 2 |
| E. | EXECUTIVE SESSION | 2 |
| F. | LOCATION OF BOARD HEARINGS | 2 |
| G. | EXPENSES ARBITRATOR/WITNESSES/HEARING | 2 |
| **20. MISSING, INTERNMENT, HOSTAGE, OR PRISONER OF WAR BENEFITS** | | **20.1-2** |
| A. | GENERAL | 1 |
| B. | DEATH & SURVIVOR BENEFITS | 1 |
| **21. DRUG & ALCOHOL TESTING** | | **21.1** |
| **22. SAFETY, SECURITY, HEALTH & EAP** | | **22.1-3** |
| A. | GENERAL | 1 |
| B. | AFA SAFETY, SECURITY & HEALTH COMMITTEE | 1 |
| C. | ACCIDENT, INCIDENT & HIJACKING | 1 |
| D. | FLIGHT ATTENDANT HEALTH | 2 |
| E. | EAP | 3 |
| **23. GENERAL** | | **23.1-6** |
| A. | COMMUTER POLICY | 1 |
| B. | INFLIGHT RETIREMENT RECOGNITION | 3 |
| C. | NON-DISCRIMINATION | 4 |
| D. | FLIGHT ATTENDANT JUMPSEAT | 4 |
| E. | COMPANY PROPERTY | 4 |
| F. | CIVIL RESERVE AIR FLEET (CRAF) | 4 |
| G. | SAVINGS CLAUSE | 4 |
| H. | EMPLOYEE FILES | 4 |
| I. | AIRCRAFT TIDYING | 5 |
| J. | MONITORING DEVICES | 5 |
| **K.** | WEIGHT | 5 |
| **L.** | HANDBOOK & FAM | 6 |
| M. | IDENTIFICATION BADGES | 6 |
| N. | INDEMNIFICATION | 6 |
| O. | QUOTA | 6 |
| **24. HOTEL ACCOMMODATIONS** | | **24.1-2** |
| A. | CREW ACCOMMODATIONS | 1 |
| B. | TRANSPORTATION | 2 |
| C. | ARRIVAL | 2 |
| D. | REIMBURSEMENT | 2 |
| E. | GENERAL | 2 |
| **25. BENEFITS** | | **25.1-3** |
| A. | HEALTH INSURANCE | 1 |
| B. | SHORT TERM DISABILITY | 1 |
| C. | LONG TERM DISABILITY | 1 |
| D. | 401(K) | 2 |
| E. | PASSES | 2 |
| F. | RETIREMENT | 2 |
| G. | PET INSURANCE | 2 |
| H. | LIFE INSURANCE | 2 |

| | |
|---|---|
| I.    Flexible Spending Account | 2 |
| **26.  MEDICAL EXAMS** | **26.1-2** |
| A.    Requirements | 1 |
| B.    Independent Medical Examination | 1 |
| C.    Disputed Results | 1 |
| **ARTICLE 27.  MANAGEMENT RIGHTS** | **27.1** |
| **ARTICLE 28.  DURATION** | **28.1** |
| **ADDENDUM** | |
| **LETTERS OF AGREEMENT** | |
| Appendix 1 | A.1 |
| LOA 1 | A.2 |
| LOA 2 | A.3 |
| LOA 3 | A.4 |
| LOA 4 | A.10 |
| LOA 5 | A.11 |
| **LETTERS FROM THE COMPANY** | |
| Voluntary Self Disclosure | A.10 |
| Navblue PBS | A.11 |
| **INDEX** | **I.1-3** |

**ARTICLE 1**
**RECOGNITION AND SCOPE**

A. **RECOGNITION**

1. In accordance with certification (R-7238) made by the National Mediation Board, the Company hereby recognizes the ASSOCIATION OF FLIGHT ATTENDANTS-CWA as the duly designated and authorized representative of the Flight Attendants in the employ of the Company for the purposes of the Railway Labor Act, as amended.

2. The Company recognizes the right of Flight Attendants on the Frontier Flight Attendant System Seniority List to perform the Company's flying on the Company's aircraft as specified in this Agreement.

B. **SCOPE**

1. This Agreement covers all revenue flying performed on Company aircraft by Company Pilots.

2. As used herein, the term "all revenue flying" will include, but not be limited to, all flying over the Company's present or future routes and extensions thereof, and any contract (government, military or commercial) flying, charter flying and any "Wet Lease" flying performed by the Company.

3. All revenue flying covered by this Agreement will be performed by Flight Attendants whose names appear on the Frontier Airlines, Inc. Flight Attendant System Seniority Lists under the terms and conditions of the Agreement.

C. **SUCCESSOR**

1. The provisions of this Agreement will be binding upon any Successor.

2. The Company will require any successor, assign, assignee, transferee, administrator, executor and/or trustee of the Company ("Successor") resulting from the transfer (in a single transaction or in multi-step transactions) to the Successor of the ownership and/or Control of all or substantially all of the equity securities and/or assets of the Company (a "Successorship Transaction") to employ the Flight Attendants on the Frontier Airlines System Seniority List in accordance with the provisions of the Agreement and to assume and be bound by the Agreement.

3. The Company agrees to give written notice of the terms of this Agreement to a proposed Successor, before concluding any Successorship Transaction. The Company agrees that no agreement or other legally binding commitment involving a Successorship Transaction will be signed or otherwise entered into, unless it is agreed in writing as a material and irrevocable condition of entering into, concluding and implementing the transaction, that this Agreement and recognition of the Union is assumed by the Successor(s), and that the Flight Attendants on the Frontier Airlines Flight Attendants' System Seniority List will be employed in accordance with the provisions of this Agreement. The Company will provide the Union with the details of, and material agreements related to, any such transaction in a timely manner.

D. **MERGER PROTECTION**

1. In the event of any merger of the Company with another airline, acquisition of the Company by another airline, or acquisition by the Company of another airline, which affects the seniority rights of Flight Attendants on the Frontier Airlines Flight Attendant System Seniority List, the parties will make their best efforts to integrate the seniority lists in a fair and equitable manner including, where applicable, agreement through collective bargaining between the carriers and the representatives of the Flight Attendant groups affected. In the event of failure to agree, the dispute shall be resolved in accordance with Sections 2, 3 and

13 of the Allegheny-Mohawk Labor Protective Provisions, except that the integration of the seniority lists of the respective Flight Attendant groups shall be governed by the AFA Merger Policy if both pre-transaction Flight Attendant groups are represented by the AFA.

2. The term merger as used herein means joint action by the two (2) carriers whereby they unify, consolidate, merge, or pool in whole or in part their separate airline facilities or any of the operations or services previously performed by them through such separate facilities.

3. Upon announcement of any transaction which is intended to result in the consolidation of the Company with another air carrier, the parties will meet promptly to negotiate an appropriate fence agreement and to implement a seniority integration process as described in Section 1.D.1. above.  These discussions shall not be a prerequisite for closing or completing a transaction under this Section.

## E.  EXPEDITED ARBITRATION

Disputes concerning alleged violation of this Article 1 will be resolved by final and binding arbitration on an expedited basis directly before the Flight Attendants System Board of Adjustment sitting with a neutral member. The dispute will be heard no later than fifteen (15) days following the submission to the System Board (subject to the availability of the arbitrator) and decided no later than thirty (30) days after submission, unless the parties agree otherwise in writing.

## F.  DEFINITIONS

"Control" - The ownership of more than 50% of the outstanding capital stock of an entity or voting securities representing more than 50% of the total voting power of outstanding securities then entitled to vote generally in the election of such entity's board of directors or other governing body.

## G.  CHANGES IN WRITING

Any changes to this Agreement will be in writing and signed by the appropriate Company and Union representatives.

ARTICLE 2
DEFINITIONS

| A. | Active | The time a Flight Attendant is available for Duty Assignment or on paid time off.   A Flight Attendant on leave of absence, furlough, or another "no pay" status is not considered Active, unless otherwise specified in this Agreement. |
|---|---|---|
| B. | Add | To pick up additional Trips in order to increase the value of a Flight Attendant's line or to replenish his/her sick bank. |
| C. | Agreement | This Collective Bargaining Agreement (CBA) including any Letters of Agreement or Memorandum of Understanding between the Company and the Union. |
| D. | Artificial Credit | Unpaid Credit used to adjust or build a schedule due to known absences. |
| E. | Association | See Union. |
| F. | Automated Bid System | The software systems used for the monthly Bid process, vacation bidding, vacancy bidding, training, and adjusting schedules. |
| G. | Available to Assign (AVA) | A Flight Attendant available for assignment or Reassignment per the terms of this Agreement. |
| H. | Award | An assignment given to a Flight Attendant Based on his/her individual seniority and Bid preferences, or as otherwise provided in this Agreement, as submitted through the Automated Bid System. |
| I. | Base | Any geographic locations designated by the Company where Flight Attendants are stationed and their duty assignments are scheduled to begin and end. |
| J. | BLT | Base local time. |
| K. | Bid | Preferences submitted by a Flight Attendant through the Automated Bid System. |
| L. | Bid Period | A block of time for which Flight Attendants Bid and are awarded schedules.  Under no circumstances will a Bid Period be less than 30 days. |
| M. | Block Hour/Block Time | The period of time beginning when an aircraft's parking brake is released and the boarding door is closed and ending at Block In. |
| N. | Block In | The time at which an aircraft reaches a destination (generally at a gate), the parking brake is set, and the boarding door is open. |
| O. | Calendar Day | Beginning at 0001 and ending at 2400. |
| P. | Call-out Status | A period of time when a Reserve Flight Attendant must be available to receive duty assignments from Crew Scheduling. |
| Q. | Charter | An offline or online revenue flight that is not a regularly scheduled flight. |
| R. | Co-Base/ Domicile | A location to which Flight Attendants are assigned consisting of more than one (1) airport. |
| S. | Continuous Duty Overnight/ Standup (CDO) | A scheduled duty period that begins in one Calendar Day and ends in the following Calendar Day, which includes an overnight stay out of Domicile that is scheduled for less than the contractually required minimum Rest. |
| T. | Company | Frontier Airlines, Inc. |
| U. | Company Offered Leave of Absence (COLA) | A voluntary unpaid leave of absence for a period of time as offered by the Company and awarded as described in Article 12.D. |
| V. | Credit/ Credit Time/ Credit Hour | The total amount of time added to a Flight Attendant's schedule.  Includes Block Time, Company business, training, or any other time used for pay purposes. |
| W. | Day Off | A Calendar Day Off free of any duty. |
| X. | Deadhead | Transportation at Company direction via air or ground, to or from an assignment. |
| Y. | Debrief | The time allowed for completing post flight duties. |

| Z. | Declared Irregular Operations (DIO) | A short-term event including weather, airport closure, etc. that significantly disrupts or that is predicted to significantly disrupt at least 25% of the total daily system flight segments. |
|---|---|---|
| AA. | Domicile | See Base. |
| BB. | Drop | The removal of flight(s) or assignments from the Flight Attendant's schedule. |
| CC. | Duty Assignment | The assignment of a Trip or other work by the Company. |
| DD. | Duty Period/Duty Time | All time a Flight Attendant is on duty, commencing with report for duty and terminating when a Flight Attendant is released from duty. |
| EE. | Emergency Leave | Unpaid time off for unavoidable serious circumstances up to five (5) days with the approval of Inflight management. |
| FF. | Ferry | A flight that does not transport revenue passengers used to reposition an aircraft to where it is needed. |
| GG. | Flight Attendant | An employee of the Company whose name appears on the Flight Attendant Seniority List as defined by Article 10 of this Agreement, and whose duties include the performance of inflight and ground cabin services. |
| HH. | Flight Attendant Commuter (FAC) | A Flight Attendant who lives in a different city other than his/her assigned Base and commutes to Base via air. |
| II. | Furlough | The involuntary removal of a Flight Attendant from Active duty as a Flight Attendant due to a reduction in force. |
| JJ. | Golden Day Off | A non-working, non-moveable Day Off exempt from assignment except as allowed by Article 6.C.4. These are all Days Off following the Movable Day, up until the next Reserve Shift or the Day Off following the block of six (6) Reserve Shifts. |
| KK. | Grievance | A complaint against the Company that alleges contract violations or unfair disciplinary action. |
| LL. | Ground Time | The amount of time between flight segments. |
| MM. | Initial Trip Report | The day and report time for the first day of a single or multi-day Trip. |
| NN. | International Flight | Any flight operating to or from a city outside the United States of America. |
| OO. | Junior Assignment | An involuntary duty assignment given to a Flight Attendant on a scheduled Day Off. |
| PP. | Layover/RON | An overnight Rest period outside the Flight Attendant's Base. |
| QQ. | Like Trip | A replacement Trip due to a cancellation, schedule change, or an administrative error.  The replacement Trip must fall within the following guidelines: Report time no more than one (1) hour prior to the original Report Time and a Release time of no more than three (3) hours after the original Release time for a "Reschedule" or two (2) hours after the original Release time for a "Reroute". |
| RR. | Lineholder | A Flight Attendant who has been awarded a line. |
| SS. | Longevity | Effective September 1, 2019, the period of time commencing on the Flight Attendant's date of hire as a Frontier employee (graduation date) and continuing while the Flight Attendant is Active, except where specifically stated otherwise in this Agreement.  Flight Attendants hired prior to September 1, 2019 will maintain their Longevity as reflected in Appendix A, unless otherwise specified in this Agreement. |
| TT. | Low-time | As described in Article 5.K, a position granted for a defined period of time to Flight Attendants who will be awarded a line that is between thirty-seven and a half hours (37:30) and fifty-eight hours (58:00).  She/he may work up to fifty-nine hours and fifty-nine minutes (59:59) per Bid Period. |

| UU. | Mixed Line | A Bid Period award built in accordance with this Agreement that consists of Trips, blocks of Reserve Shifts, days off, and Pre-award requests. |
|---|---|---|
| VV. | MT | Mountain time. |
| WW. | Month | A calendar month. |
| XX. | Moveable Day Off | The first scheduled Day Off following a block of Reserve Shifts of less than six (6) days. A Flight Attendant can be assigned into a Moveable Day Off. |
| YY. | Open Time | Trips or portions of Trips that are unassigned, unawarded or dropped by Flight Attendants. |
| ZZ. | Positive Contact | A live telephone or in-person conversation between a Flight Attendant and the Company. Self-notification is also considered to be Positive Contact. |
| AAA. | Pre-award | A request submitted prior to a Bid Period to accommodate preplanned absences including, but not limited to: vacation, scheduled training, Company business, Union days, and jury duty. |
| BBB. | Preferential Bidding System (PBS) | The automated system in which Flight Attendants enter preferences for each Bid Period for the purpose of building their initial schedule. |
| CCC. | Ready Reserve (RR) | A period of time as defined in this Agreement when a Reserve Flight Attendant is required to be on Reserve at his/her Base airport or another Base airport. |
| DDD. | Reassignment | A Flight Attendant is considered to be reassigned when she/he is directed to work a flight or flights that were not part of his/her original schedule.  Resuming originally scheduled flying or deadheading to resume originally scheduled flying does not constitute a reassignment. |
| EEE. | Recurrent Ground School/ Recurrent Training | Required annual training for a Flight Attendant to maintain qualifications. |
| FFF. | Red-eye | Any flight other than a CDO, that reports prior to and releases after, or the entire Duty Period occurs between, 0100 and 0300 Base Local Time. |
| GGG. | Release | Time when a Flight Attendant is relieved from duty. |
| HHH. | Report Time | The time a Flight Attendant is scheduled to report for a flight assignment, training, or other Company-assigned duty. |
| III. | Reroute | A change to a Trip after 1800 the day prior to an Initial Trip Report. |
| JJJ. | Reschedule | A change to a Trip before 1800 the day prior to an Initial Trip Report. |
| KKK. | Reserve | A Flight Attendant who is on Reserve status. |
| LLL. | Reserve Shift /Availability Shift/Shift | A period of time when a Reserve Flight Attendant is on call and available for an assignment. |
| MMM. | Reserve Line | A Bid Period award built in accordance with work rules of this Agreement consisting of Reserve Shifts, days off and Pre-award requests. |
| NNN. | Rest | A period of time between duty periods, during which a Flight Attendant is free from all Company duty. |
| OOO. | Segment/Leg | A flight between cities that may or may not terminate in Base. |
| PPP. | Seniority/ Seniority Date | The length of service with the Company as a Flight Attendant beginning with the Flight Attendant's date of hire as a Flight Attendant. |
| QQQ. | Swap | A Trip exchange with available Open Time via the Automated Bid System. |
| RRR. | Temporary Low Time | A Low Time position awarded for one (1) Bid Period at a time, pursuant to Article 5.K.6. |
| SSS. | Trade | An exchange of flying, vacation or Reserve days/duty periods (or other activities as allowed by this Agreement) between two (2) Flight Attendants via the Automated Bid System. |
| TTT. | Training Event | An assignment constructed for Flight Attendants attending a training class out of Base or a single day event in Base. |

| UUU. | Transition | The period of time when Trips may overlap Bid Periods. |
|---|---|---|
| VVV. | Trip/ Sequence/ Pairing | A segment or series of segments over one (1) or more days that begin and end in a Flight Attendant's Base. |
| WWW. | Union | Association of Flight Attendants – CWA, AFL-CIO |
| XXX. | Vacancy | Open Flight Attendant positions at a specified Base. |
| YYY. | Wet Lease | An Agreement between the Company and another air carrier in which the Company provides aircraft(s) and crew(s) to the other air carrier. |

**ARTICLE 18**
**GRIEVANCE PROCEDURE**

**A. GENERAL**

Unless otherwise provided in this Agreement, a Flight Attendant, or the Union on behalf of a Flight Attendant, may file a grievance concerning any dispute:

1. Arising out of the interpretation or application of any of the provisions of this Agreement; or

2. To dispute discipline or discharge that the Flight Attendant believes was imposed without just cause.

**B. INVESTIGATIONS – DISCIPLINE AND DISCHARGE**

1. Investigatory Meetings

   a. A Flight Attendant will not be disciplined or discharged without just cause and without previously being afforded a meeting before the Director of Inflight or her/his designee, provided that the Flight Attendant has made her/himself available for the meeting.

   b. The Flight Attendant will be notified of the time and place of the meeting and the nature of the matter to be discussed. When a Flight Attendant is required to attend an investigatory meeting, the Flight Attendant will be permitted to have Union representation if a representative is reasonably available on the date and time of the scheduled investigatory meeting.

   c. If a Union representative is not reasonably available or if the Flight Attendant declines Union representation, the Flight Attendant may request the presence of another available Frontier Flight Attendant during the investigatory meeting. The Company may deny the presence of a particular Flight Attendant(s) pursuant to this paragraph if that Flight Attendant is involved in any manner in the incident under investigation. Upon agreement of the parties, the Flight Attendant may be permitted to attend an investigatory meeting via telephone conference.

2. Nothing herein will prevent the Company from holding a Flight Attendant out of service with or without pay during an investigation. Flight Attendants will not be eligible for pass travel benefits while held out of service, except to attend an investigatory meeting.

3. When a Flight Attendant is disciplined or discharged, the Company will furnish him/her with a written statement of the precise charge(s) against him/her.

4. A documented verbal discussion, verbal counseling or verbal warning does not constitute an action of discipline.

5. A notice of discipline or discharge will be delivered to the Flight Attendant and the Union by any of the following methods: hand delivery in person; v-file or e-mail (in either case, emailed concurrently to the Union); regular U.S. mail; U.S. certified mail/return receipt requested; or express delivery (e.g., DHL, UPS, FedEx, USPS, etc.).

**C. THE GRIEVANCE PROCESS**

1. Discipline and Discharge

   a. To be considered timely, a grievance challenging an action of discipline or discharge will be in writing, signed by the affected Flight Attendant or the Union representative and must be submitted to the Director

of Inflight no later than 14 Calendar Days following the date upon which the Flight Attendant receives written notice of the discipline or discharge.

b.  Grievances must be submitted to the Director of Inflight or his/her designee and will be deemed filed upon receipt.

c.  Failure to file a grievance within the specified time limits constitutes a waiver of the grievance.

d.  An investigation and hearing will be held by the Director of Inflight or his/her designee no later than 30 Calendar Days following the Flight Attendant's submittal of the grievance to the Director of Inflight. Such hearing will not be conducted by the same person who initiated the disciplinary action, or by anyone subordinate to that person.

e.  The parties may agree to hold a Hearing for the purposes of hearing multiple grievances (i.e., "consolidated Hearing").  If that is the case, then the 30-Calendar Day time period above may be extended for the grievances to be heard during the consolidated Hearing.

f.  Upon agreement of the parties, Hearings may be held telephonically or other technological means.

g.  Within 14 Calendar Days following the date of the Hearing, the Company will issue a decision in writing to the affected Flight Attendant and the Union. For group grievances or consolidated Hearings, the Company will issue a decision in writing to the Union within 30 Calendar Days following the hearing date.

h.  The decision of the Company may be appealed to the System Board of Adjustment in accordance with Article 19 System Board of Adjustment within 14 Calendar Days of receipt of the Company's written decision provided pursuant to Section 1.g. above.

i.  A Flight Attendant disciplined or discharged during his/her probationary period may not dispute or challenge such discipline or discharge through the grievance procedure.

2.  Non-Disciplinary Grievances

a.  A Flight Attendant or the Union on behalf of a Flight Attendant or group of Flight Attendants may file a grievance concerning any action of the Company affecting them that they believe violates the terms of this Agreement. Prior to filing such a grievance, the Flight Attendant should discuss the matter with his/her supervisor, and the Union should discuss the matter with the Director of Inflight in an effort to resolve the matter.

b.  Non-Disciplinary Grievances will be in writing, signed by the affected Flight Attendant or Union official and will state in reasonable detail the facts upon which the claim is based, identifying the specific provisions of the Agreement claimed to have been violated and the relief sought. The grievance must be submitted to the Director of Inflight or his/her designee within 30 Calendar Days from the time the Flight Attendant knew or reasonably should have known, of the event(s) giving rise to the grievance, whichever is earlier.

c.  An investigation and hearing will be held by the Director of Inflight or his/her designee no later than 30 Calendar Days following the Flight Attendant's request.

d.  The parties may agree to hold a Hearing for the purposes of hearing multiple grievances (i.e., "consolidated Hearing"). If that is the case, then the 30-Calendar Day time period above may be extended for the grievances to be heard during the consolidated Hearing.

e.  Upon agreement of the parties, Hearings may be held telephonically or other technological means.

f.   Within 14 Calendar Days following the date of the Hearing, the Company will issue a decision in writing to the affected Flight Attendant and the Union. For group grievances or consolidated Hearings, the Company will issue a decision in writing to the Union only within 30 Calendar Days following the hearing date.

g.   The decision of the Company may be appealed to the System Board of Adjustment in accordance with Article 19 System Board of Adjustment within 14 Calendar Days of receipt of the Company's written decision provided pursuant to Section 2.f. above.

## D.   GRIEVANCE REVIEW MEETINGS

The Company and Union will schedule meetings regularly to review grievances pending at the System Board level in an effort to resolve as many grievances as possible. Both Company and Union will be represented by individuals with full authority to approve binding settlement agreements. Rejected offers of settlement made by the Company or Union and all other case evaluation(s) and discussion(s) will be without prejudice to either party and will be inadmissible in any System Board of Adjustment hearings. The parties may mutually agree to bypass this step in the grievance process.

## E.   TIME LIMITS & SUBMISSIONS

1.   Any time limits set forth in this Article for holding a grievance hearing may be extended by mutual agreement.

2.   If any action or decision made by the Company is not grieved or appealed by the Union or Flight Attendant within the time limits set forth in this Article, the action or decision of the Company will become final and binding.

3.   If the Company fails to render a decision within the time limits set forth in this Article, unless extended by mutual written agreement by the parties, the Union may advance the grievance to the next level in the Grievance process.

## ARTICLE 19
## SYSTEM BOARD OF ADJUSTMENT

**A. ESTABLISHMENT**

In compliance with Section 204, Title II of the Railway Labor Act, as amended, there is hereby established a System Board of Adjustment for the purpose of adjusting and deciding disputes which may arise under the terms of the Agreement, and which are properly submitted to it as set forth in Article 18, which Board will be known as the "Frontier Flight Attendants' System Board of Adjustment."

**B. MEMBERSHIP**

1. The Board will be comprised of a Company Board Member, a Union Board Member, and a single neutral member (i.e., the Chairperson).

2. Each Board member will be free to discharge his/her duty in an independent manner, without fear that her/his individual relations with the Company or with the Union may be affected by action taken in good faith in her/his capacity as a Board member. Board members who are employees of the Company will be granted time off to attend the hearing and subsequent executive session(s).

3. The parties will agree on a panel of nine (9) approved arbitrators from which neutral members will be selected using the alternate strike method. The panel will be established within 45 Calendar Days of the signing of this Agreement.  Once selected, a party may permanently remove a neutral from the panel after one (1) year; however, the neutral may not be removed from any case to which she/he has already been assigned without agreement between the Company and the Union. If a panel member is removed by a party, voluntarily removes her/himself from the panel, or can no longer act as a neutral (e.g., death, illness, retirement), the parties will select a mutually agreeable permanent replacement.

4. Notwithstanding the foregoing, the parties may at any time agree to select a neutral who is not a member of its standing panel to sit as the Chairperson of the System Board of Adjustment.

**C. JURISDICTION**

1. The Board will have jurisdiction over any grievance between any Flight Attendant and the Company, or the Union and the Company, growing out of grievances or out of interpretation of any of the terms of this Agreement; provided, however, that the jurisdiction of the Board will not extend to changes in hours of employment, rates of compensation or working conditions. The Board will consider any grievances properly submitted to it by the Union or the Company when such grievances have been previously submitted to, but not settled, in accordance with the grievance provided for in this Agreement.

2. Each grievance presented to the Board will be treated as a separate case, unless the parties mutually agree otherwise.

3. Appeals to the Board will be made in writing with a copy of the grievance attached, and will contain the following:

   a. A statement of facts;
   b. The question(s) at issue;
   c. The position of the appealing party;
   d. The understood position of the other party;
   e. Specific provisions of the Agreement alleged to have been violated; and
   f. The remedy sought by the appealing party.

**D.  DOCUMENTS, WITNESSES, EVIDENCE AND REPRESENTATION**

1.  The Union will designate its representative and the Company will designate its representative. Evidence may be presented either orally, in writing, or both.

2.  Witnesses may testify telephonically, provided that the party, whose witness(s) will testify telephonically, has notified the other party prior to the hearing date.

3.  The number of witnesses summoned at any time will not be greater than the number which can be spared from the Company's operation without interference with the services of the Company.

4.  Unless the parties mutually agree otherwise, a stenographic report is to be taken.

**E.  EXECUTIVE SESSION**

Following the hearing, or at any time prior to the issuance of a final decision in the matter, upon the request of any member of the Board, the members of the Board will convene in executive session.

**F.  LOCATION OF BOARD HEARINGS**

Board hearings will be held at a location agreed to by the parties on a case by case basis. If the parties are unable to agree to a location, the case will be heard at the Company's corporate headquarters or within the general vicinity of the Company's corporate headquarters.

**G.  EXPENSES – ARBITRATOR/WITNESSES/HEARING**

1.  The parties will each pay the cost and expenses of their own attorneys and/or advocates, witnesses and Board Members.

2.  Unless otherwise provided in this Agreement, all fees and expenses of the arbitrator and those related to the conduct of the hearing will be borne equally by the Company and the Union (e.g., hearing room rental, arbitrator fees and travel expenses, court reporter, transcript, etc.).

3.  The grievant (whether an employee of the Company or not), employee witnesses, employee board members, and representatives who are employees of the Company will be provided round trip positive space transportation on the lines of the Company from their point of duty or assignment, if applicable, to the location at which they must appear as witness or representatives.

4.  Should a hearing before the Board be postponed or canceled without mutual consent of the Company and the Union, the party postponing or cancelling will bear any and all expenses incurred by the arbitrator and those related to the postponement or cancellation of the hearing (e.g., arbitrator cancellation fee and travel expenses, hearing room rental, etc.).